Gladys BRINKMAN, Plaintiff and
Appellant,

v.

MUTUAL OF OMAHA INSURANCE COM-
PANY, Defendant and Respondent.

Gladys BRINKMAN, Plaintiff and
Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE IN-
SURANCE COMPANY, Defendant
and Respondent.

Civ. Nos. 8697, 8698.

Supreme Court of North Dakota.

May 14, 1971.

Rehearing Denied June 22, 1971.

Rausch & Chapman, Bismarck, for plaintiff and appellant.

Conmy, Conmy, Rosenberg & Lucas, Bismarck, for defendant and respondent, State Farm Mutual Automobile Ins. Co.

Zuger, Bucklin & Zuger, Bismarck, for defendant and respondent, Mutual of Omaha Ins. Co.

PAULSON, Judge.

Gladys Brinkman, the widow of Fred Brinkman, commenced an action against Mutual of Omaha Insurance Company [herein Mutual of Omaha] to recover accidental death benefits as beneficiary under a Mutual of Omaha policy, claiming that her husband's death was due to an accident. Mrs. Brinkman also commenced a separate action against State Farm Mutual Automobile Insurance Company [herein State Farm] to recover accidental death benefits provided for under a policy she and her deceased husband had with State Farm. Each insurance company filed a separate answer, alleging that Mr. Brinkman's death was not accidental and thus did not come within the provisions of the respective insurance contracts. Since these actions arose from the same set of facts, the cases were combined for trial. At the close of the trial Mrs. Brinkman moved for a directed verdict, which motion was denied. The cases were then submitted to the jury and verdicts were returned in favor of Mutual of Omaha and State Farm, dismissing Mrs. Brinkman's complaints. Mrs. Brinkman then made a motion in each case for judgment notwithstanding the verdict, which motions were also denied. Mrs. Brinkman's motion for a new trial in each case also was denied. Mrs. Brinkman has perfected separate appeals from the October 17, 1969, order denying her motions for judgment notwithstanding the verdict and motions for a new trial. While each of these cases came to this court on a separate appeal, they have been combined for the purpose of this opinion.

The facts in this case are that the Brinkmans lived on a farm about 11 miles south of Carson, in Grant County, North Dakota, their farm being located about ¾ of a mile south and west of an intersection of two gravel roads. The gravel road running north and south was known as a farm-to-market road. On the 9th of June, 1967, after breakfast, Mr. Brinkman left home in his 1957 Studebaker automobile to visit a neighboring farmer, Norman Bohrer, who lived 3 miles north on the east side of the farm-to-market road. Mr. Bohrer stated that Mr. Brinkman arrived at the Bohrer farm between 9:00 and 9:30 that morning and stayed for approximately 1½ hours, leaving between 10:30 and 11:00 that morning. Mr. Bohrer stated that he had driven down the gravel road later that day, passing the Brinkman farm intersection, to visit another neighbor, S. W. Hartman, and, while doing so, noticed the Brinkman vehicle in the ditch on the east side of the road, some time between 5:00 and 5:30 p. m., but he did not stop. He said he had no reason to believe that anything unusual had occurred. At approximately 6:00 to 6:30 that evening, Mrs. Brinkman walked up the road from her home to get the mail from the mailbox, which was located on the west side of the road on the south side of the intersection. Traveling from the north, Mr. Brinkman

would have been required to make a right turn to enter his farm driveway. As Mrs. Brinkman approached the mailbox she noticed her husband's Studebaker, standing on its wheels facing south, in the east ditch, south of the intersection of the two gravel roads. When she came close to the car she saw her husband lying in the front seat, with his head on the passenger side. At this time Mr. Brinkman was dead. All of the relatives and friends who came to the scene of the accident, as well as the investigating officers, testified that the farm-to-market road was in very good condition, and that it was a fair day in June; there was no indication on Mr. Brinkman's car that it had been involved in a collision and none of the tires had blown out; and there had been no failure of the steering mechanism. The key was in the "on" position in the ignition switch and consequently the battery was dead. All of the witnesses who examined the tire tracks leading to the location of Mr. Brinkman's car testified that the tracks indicated that the descent of the car into the ditch had been gradual and that the car had not suddenly veered into the ditch.

The Grant County coroner, Dr. M. S. Jacobson, a physician of Elgin, North Dakota, arrived at the accident scene with an Elgin mortician at approximately 8:30 that evening. Dr. Jacobson found Mr. Brinkman's body lying on its side, partially on the front seat of the car, between the dashboard and the seat, with the head toward the passenger side. Dr. Jacobson made a superficial examination at the scene and found that Mr. Brinkman had abrasions on his forehead, his left temple, and also above his left ear. There were some bloodstains observed on the floor of the car, beneath the position of the head. At the funeral home in Elgin a more thorough examination was made, excluding an autopsy and X-rays. Dr. Jacobson stated that the only additional marks he observed on Mr. Brinkman's body were an abrasion on the left shoulder and other minor bruises. The time of death was placed at 11:00 a. m., June 9, 1967. Since the driver's car door

window was cracked, it appears that the injuries to Mr. Brinkman's head occurred when his head made contact with that window. Nevertheless, it was Dr. Jacobson's determination that the head injuries were not so severe as to have been the cause of Mr. Brinkman's death. Since Dr. Jacobson, as a family physician, was familiar with the personal health of Mr. Brinkman since 1942, he testified that it was his opinion that the death of Fred Brinkman was due to a sudden coronary thrombosis. Therefore, Dr. Jacobson signed the death certificate in which he certified the cause of death as coronary thrombosis.

Primarily because of Dr. Jacobson's analysis and conclusion, Mutual of Omaha refused to acknowledge Mrs. Brinkman's accidental death benefit claim, stating that its insurance policy contained the following provision:

"PART A.          DEFINITIONS

"Injuries" means accidental bodily injuries received while this policy is in force and resulting in loss independently of sickness or any other cause.

\* \* \*"

State Farm also refused the accidental death benefit claim, stating that its insurance policy contained the following provision:

"Coverage S

"Division 1—Death Indemnity. To pay the amount stated as applicable to the insured designated for such coverage in the declarations in event of the death of each insured which shall result directly and independently of all other causes from bodily injury caused by accident and sustained by the insured while occupying or through being struck by an automobile, provided the death shall occur within 90 days from the date of such accident."

Mrs. Brinkman contends, through these lawsuits, that her husband's death was accidental and thus the primary issue in these cases is raised: Was Mr. Brinkman's death

accidental as the result of injuries received when his car left the road by the Brinkman farm on June 9, 1967, thus entitling Mrs. Brinkman to recover the accidental death benefits of the two policies in question?

In support of Mrs. Brinkman's assertion, she claims that the death certificate stating that Mr. Brinkman's death was caused by a coronary thrombosis is not prima facie proof of the cause of his death, but is merely a conclusion made as a result of Dr. Jacobson's analysis as the coroner.

Mrs. Brinkman further contends that the trial court erred in not granting the motions for judgment notwithstanding the verdict or the motions for a new trial.

The applicable North Dakota statutes and North Dakota Rules of Civil Procedure are as follows:

11–19–02, N.D.C.C. "When coroner to hold inquest.—Except as otherwise specifically provided, the coroner shall hold inquests upon the dead bodies of such persons only as he believes to have died within his county by unlawful means."

11–19–03, N.D.C.C. "If inquest not held—Certificate filed.—If the coroner does not deem it necessary to hold an inquest in a case brought to his attention, he shall file with the clerk of the district court of the county within which the dead body is found a certificate setting forth all the facts in relation to the case."

11–19A–11, N.D.C.C. "Coroner may perform autopsy.—The coroner or his medical deputy, may, if he deems it necessary, take custody of the dead body. If, in the opinion of the sheriff and state's attorney, an autopsy is deemed necessary, such autopsy shall be performed by the coroner or his deputy coroner, or pathologist. A detailed description of the observations written during the progress of such autopsy and the conclusions drawn therefrom shall be filed in the office of the coroner."

11–19A–13, N.D.C.C. "Cause of death, determination.—The cause of death, the manner and mode in which the death occurred, as delivered by the coroner and incorporated in the coroner's verdict shall be incorporated in the death certificate filed with the registrar of vital statistics of this state."

11–19A–17, N.D.C.C. "Application.—The provisions of this chapter shall apply to every county in this state having a population of eight thousand or more according to the last preceding official federal census, and the provisions of chapter 11–19 and section 11–10–02 shall not be applicable to such counties. The provisions of this chapter shall not apply to counties having a population of less than eight thousand according to the last preceding official federal census and such counties shall be governed by the provisions of chapter 11–19 and section 11–10–02."

23–02–40, N.D.C.C. "Effect of certificate of proof of birth and of certified copy of birth or death certificate.—A registrar's certificate of the record of a birth and a certified copy of any birth or death certificate issued by the state registrar of vital statistics shall be prima facie evidence of the facts therein stated and shall be accepted as such proof in any court or before any commission, bureau, board, or agency in this state."

Rule 50(b), N.D.R.Civ.P. "Motion for judgment notwithstanding the verdict. In denying a motion for a directed verdict the court shall be deemed to have submitted the claim to the jury subject to a later determination of the questions of law raised by the motion. Within ten days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party, within ten days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new

trial may be joined with this motion or a new trial may be prayed for in the alternative. If no verdict was returned, the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

Rule 59(b), N.D.R.Civ.P. "Causes for new trial. The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

\* \* \* \* \* \*

"6. Insufficiency of the evidence to justify the verdict or other decision, or that it is against law;

\* \* \*"

■ The primary issue is whether or not Mr. Brinkman suffered an accidental death. This court, in Grabau v. Hartford Accident & Indemnity Company, 149 N.W.2d 361 (N.D.1967), in paragraph 1 of the syllabus, held:

"The plaintiff has the burden of proof in an action for death benefits upon an accident insurance policy where policy insured against accidental bodily injuries sustained directly and independently of all other causes to show that the acts which preceded the fatal injury were acts that were unforeseen, unexpected, unusual, unintentional, or involuntary."

To overcome this burden, Mrs. Brinkman relied principally upon the expert testimony of Dr. Paul F. Klosterman, a specialist in internal medicine who practiced in a Bismarck, North Dakota clinic. Dr. Klosterman had never treated Mr. Brinkman during Mr. Brinkman's lifetime; nor, to his knowledge, had he ever seen Mr. Brinkman. However, Dr. Klosterman testified as to his expert opinion based upon the facts as presented to him. He testified that there are no outward signs by which one can determine that a person died of a coronary thrombosis and, further, that the side of the head is particularly vulnerable and an injury to this area is frequently a cause of death. He concluded by saying that in his opinion it was more probable that Mr. Brinkman died as the result of the head injuries he had received than of a coronary thrombosis. However, he did admit that it was possible that a coronary thrombosis was the cause of Mr. Brinkman's death. Dr. Klosterman also testified that while it is impossible to absolutely conclude from only an external examination that a person has died as the result of a coronary thrombosis, when he had knowledge of the personal medical history of one of his patients for some time and had been treating such patient for various heart problems which could have developed into a coronary thrombosis, he has signed and, on some occasions, he would sign a death certificate which recited coronary thrombosis as a cause of death without performing an autopsy.

The defense presented expert testimony by Dr. Jacobson, who testified not only as the coroner, but also as a personal physician of Mr. Brinkman, having treated him professionally on various occasions since 1942. In 1955, Dr. Jacobson treated Mr. Brinkman for pre-cardial pain. Dr. Jacobson also testified that Mr. Brinkman had a long history of asthma. Dr. Jacobson was also familiar with the treatment given to Mr. Brinkman by Dr. Adolph A. Curiskis, another Elgin physician, who practiced in the same hospital as Dr. Jacobson.

Dr. Curiskis testified that Mr. Brinkman had arrived at the emergency room of the Elgin Hospital at 9:30 on the evening of February 9, 1967, complaining of shortness of breath and pains on both sides of his sternum. Mr. Brinkman was given nitroglycerin and oxygen by mask and relief was obtained through this treatment. Dr. Curiskis stated that this indicated that Mr. Brinkman had had a cramping of the heart blood vessels. Further diagnosis at this time signified that Mr. Brinkman was suffering from angina pectoris. After the February 9 incident, and subsequent to Mr. Brinkman's release on February 16, 1967, from the Elgin Hospital, Dr. Curiskis

treated Mr. Brinkman on five separate occasions—on March 2, March 15, April 28, and, finally, on May 29, 1967—giving him nitroglycerin and other medication to dilate the blood vessels of his heart.

When an appeal is taken from the denial of a motion for a judgment notwithstanding the verdict and when considering whether the evidence is sufficient to sustain the verdict, the evidence must be considered in the light most favorable to the party in whose favor the verdict was rendered. Haugen v. City of Grand Forks, 187 N.W.2d 68 (N.D.1971); Tennyson v. Bandle, 181 N.W.2d 687 (N.D.1970); Christensen v. Farmers State Bank of Richardton, 157 N.W.2d 352 (N.D.1968); Johnson v. Frelich, 153 N.W.2d 775 (N.D. 1967); Mikkelson v. Risovi, 141 N.W.2d 150 (N.D.1966); Larson v. Meyer, 135 N.W.2d 145 (N.D.1965); Chicago, M. St. P. & P. R. Co. v. Johnston's Fuel Liners, 122 N.W.2d 140 (N.D.1963); Long v. People's Department Store, 74 N.W.2d 80 (N.D.1955); Lee v. AAA North Dakota Automobile Club, 68 N.W.2d 835 (N.D. 1955); Nelson v. Scherling, 71 N.D. 337, 300 N.W. 803 (1941); La Bree v. Dakota Tractor & Equipment Co., 69 N.D. 561, 288 N.W. 476 (1939). From the evidence we conclude that this issue presented a question of fact for the jury to determine and that the issue was properly one for the jury to decide. Thus, applying the rule that the evidence must be viewed in the light most favorable to the verdict, we hold that the evidence supports the verdict.

In discussing Mrs. Brinkman's assertion as to whether the death certificate stating that Mr. Brinkman's death was caused by a coronary thrombosis is prima facie proof of the cause of his death or was merely a conclusion made by Dr. Jacobson's analysis as coroner, we refer to the general rule as stated in 30 Am.Jur.2d, Evidence § 1113, at page 280:

"A death certificate filed as a public record by a physician is prima facie, but not conclusive, evidence of the cause of death. If the party against whom it is offered is not satisfied with the statement contained in the certificate of death, he may always contradict the record by any proper evidence. He may call the attending physician and have him explain, if explanation is deemed necessary."

Section 23–02–40, N.D.C.C., states that in North Dakota a death certificate is prima facie evidence of the facts therein stated. Chapter 11–19A, N.D.C.C., does not apply to counties having a population under 8,000. While counties with less than 8,000 people are not required to have a physician fill the office of coroner, the fact remains that in the instant case, while Grant County has less than 8,000 people, the Grant County coroner was a licensed practicing physician and also had personal knowledge, as a family physician, of the deceased's health history. Thus we hold that in the instant case the death certificate was admissible and was one of the relevant factors as to the proof showing the cause of Mr. Brinkman's death.

The questions of law raised by Mrs. Brinkman in support of her motions for judgment notwithstanding the verdict have been answered adversely to her position in previous portions of this opinion.

The final issue raised by Mrs. Brinkman is whether the trial court erred in not granting her motion for a new trial in each case. A motion for a new trial is addressed to the sound judicial discretion of the trial court and this court will not interfere unless a manifest abuse of discretion is shown. Christensen v. Farmers State Bank of Richardton, *supra*; Lake v. Neubauer, 87 N.W.2d 888 (N.D.1958). After reviewing the evidence, we agree with the trial court and thus find no abuse of discretion in the trial court's refusal to grant a new trial.

For the reasons stated in the opinion, the decision of the trial court is affirmed.

STRUTZ, C. J., and ERICKSTAD, TEIGEN and KNUDSON, JJ., concur.