Monica R. KASPER, Plaintiff/Appellant,

v.

**PROVIDENT LIFE INSURANCE COMPANY, Defendant/Appellee.**

Monica R. KASPER, Plaintiff/Appellant,

v.

**NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, Defendant/Appellee.**

Monica R. KASPER, Plaintiff/Appellant,

v.

**BANKERS LIFE COMPANY, Defendant/Appellee.**

Civ. Nos. 9612, 9612–B and 9612–C.

Supreme Court of North Dakota.

Oct. 11, 1979.

Rehearing Denied Nov. 28, 1979.

Richard P. Gallagher, Mandan, for plaintiff/appellant.

Leonard H. Bucklin, Zuger & Bucklin, Bismarck, for defendants/appellees, Provident Life Insurance Company, Northwestern National Life Insurance Company, and Bankers Life Company.

PAULSON, Justice.

Monica R. Kasper ["Monica"] is the widow of Robert W. Kasper ["Kasper"], and is the beneficiary on several life insurance policies insuring against the accidental injury and death of Kasper. Shortly after Kasper's death, Monica made a claim for the accidental death benefits ("double indemnity") provided under the policies. The companies refused to pay and Monica brought suit in the Morton County District Court. The actions against the companies were consolidated and, after trial, judgment was entered in favor of the companies. Monica appeals from that judgment. We affirm.

Robert Kasper died on September 16, 1972. At the time of his death he was insured by several insurance policies. Three of these policies were with the following companies which are parties to this appeal: Provident Life Insurance Company ["Provident"]; Northwestern National Life Insurance Company ["Northwestern"]; and Bankers Life Company ["Bankers"]. A fourth company, Midland National Life Insurance Company ["Midland"], has settled and is not a party to this appeal. Each of the companies has a provision in its policy providing for payment of extra amounts of money if death occurs due to causes specifically set out in each policy. Such a provision is commonly known as an "accidental death" or "double indemnity" provision. A small additional premium is charged for this extra coverage.

On the day of Robert W. Kasper's death, he was bird hunting south of Fort Rice in Morton County with a group of family members and friends. A prairie fire was started accidentally when a fiery wad fell into the tall grass nearby, caused by the discharge of a companion's shotgun. Kasper, a rather heavy man weighing 200 pounds and only 5'6" in height, ran over to assist his companions. Kasper vigorously fought the blaze, stamping it with his feet and swinging his jacket, in an attempt to extinguish the fire. After a few minutes of such activity, Kasper was observed to suddenly collapse and fall forward into the fire, and his death was apparently instantaneous.

Kasper's companions attempted to revive him by artificial respiration, but to no avail. He was taken to Mandan Hospital where he was pronounced dead on arrival by Dr. P. M. Ocampo, Jr., acting coroner for Morton County. Dr. Ocampo signed the death certificate on September 19, 1972, and noted thereon that the cause of death was acute myocardial infarction (heart failure). *See Abrahamson v. Amos*, 245 N.W.2d 888 (N.D. 1976) for discussion as to the significance of a death certificate in determining cause of death. No autopsy was ever performed on the body of Robert Kasper.

The policies of Provident, Northwestern, and Bankers each contain very similar provisions, because Chapter 26–03 of the North Dakota Century Code requires that all life insurance policy forms be approved by the North Dakota Commissioner of Insurance or conform to certain guidelines set out in Chapter 26–03. Because of the similarity of the policy provisions and the fact that all of the claims arose from the same occurrence, the actions were consolidated for trial and will remain consolidated on this appeal.

There is no dispute that all of the premiums were paid and that all of the policies were in effect at the time of Kasper's death. The companies have paid the regular life insurance benefits but have withheld payment of the extra "accidental death" benefits.

■ One of the first issues we will discuss on appeal is whether or not the trial court's findings of fact are erroneous. The case was tried without a jury and the trial judge sat as a finder of fact. Findings of fact by the trial court, in a case tried upon the facts without a jury, will not be set aside unless clearly erroneous. *Bladow v. Bladow*, 249 N.W.2d 917, 920 (N.D.1977); *Stockmen's Insurance Agency v. Guarantee Reserve Life Insurance Co.*, 217 N.W.2d 455, 462–63 (N.D.1974). As the court held in *Bladow*, quoting from *Eakman v. Robb*, 237 N.W.2d 423 (N.D.1975), paragraphs 4 and 5 of the syllabus:

"'4. A finding is "clearly erroneous" only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. The mere fact that the appellate court might have viewed the facts differently, if it had been the initial trier of the case, does not entitle it to reverse the lower court.

"'5. Questions of fact decided by the trial court upon conflicting evidence are not subject to reexamination by the Supreme Court.'" *Bladow, supra* at 920, quoting *Eakman, supra.*

■ In the instant case, Monica asserts that the trial court erroneously determined that Kasper's death was caused by his preexisting bodily condition and not by his exertion in fighting the prairie fire. It is a well-settled rule that evidence must be considered in the light most favorable to the party in whose favor the verdict was rendered. *Bladow, supra*, 249 N.W.2d at 920; *Brinkman v. Mutual of Omaha Ins. Co.*, 187 N.W.2d 657, 662 (N.D.1971).

In the instant case, the court heard the testimony of expert witnesses regarding the probable cause of death. Each side presented expert testimony and the court chose to adopt the testimony offered by Dr. Marlin Johnson, who testified as defendant's witness. In Finding of Fact No. 11, the trial court stated:

"11. It is most likely that the decedent either had a blood clot or was in the process of one forming prior to the exertion, or there was such an accumulation of fatty content within the circulatory system, or some other bodily disease or infirmity which caused a blood vessel leading to the heart to be occluded. For the Court to find an absence of bodily disease or infirmity contributing to the death would be to indulge in sheer speculation. The Court finds that the sudden death of Robert Kasper occurred when (as testified to by Dr. Marlin Johnson) there was a sudden change in the heart rhythm involved as a part of that general type of heart attack known as a 'myocardial infarction' which results when one, and not others, of the blood vessels supplying the heart become blocked or occluded because of bodily disease or infirmity, and a portion of the heart muscle dies leaving other portions working, and the heart rhythm then became severely distorted, or fibrillated, resulting in instant death."

It is clear that the trial court believed that Kasper's death resulted from a preexisting bodily condition and not as a direct result of his exertion in fighting the prairie fire. *Grabau v. Hartford Accident and Indemnity Company*, 149 N.W.2d 361 (N.D.1967),

is a similar case. In *Grabau*, insured was hunting in Montana on October 26, 1964. He walked 100 yards and fired a 30.06 deer rifle three times at an antelope. Grabau suddenly became ill and was returned to his home in Jamestown on October 27. He was sent to a Fargo hospital where he was found to have a ruptured aneurysm and he died on November 18, 1964. One issue was whether or not a preexisting disease had contributed to his death. The court accepted testimony which indicated that Grabau's death had resulted, at least in part, from a preexisting physical condition. "The testimony of the several witnesses—that is, the weight and credibility of such testimony, including that of the medical experts—was for the court." *Grabau, supra* 149 N.W.2d at 364; 32 C.J.S. Evidence § 567–69.

■ *Brinkman v. Mutual of Omaha Insurance Company*, 187 N.W.2d 657 (N.D. 1971), is another similar case. In *Brinkman*, plaintiff brought an action to recover accidental death benefits. The policy contained clauses similar to the clauses in the policies covering Kasper. The insured, Mr. Brinkman, was found dead at the wheel of his car in a ditch on a rural road near his farm home. An autopsy was performed. The doctor certified on the death certificate that sudden coronary thrombosis was the cause of death. Even though conflicting testimony was introduced regarding the cause of death, the trial court concluded that coronary thrombosis was the cause of death. We upheld that holding on appeal, noting that the evidence must be reviewed in the light most favorable to the party in whose favor the verdict is rendered. *Brinkman, supra* 187 N.W.2d at 662. It is a well-settled rule that it is for the finder of fact to determine whether death was proximately caused by disease or accident. 10 Couch on Insurance 2d § 41:92 (1962).

In *Jacobson v. Mutual Benefit Health & Accident Ass'n*, 70 N.D. 566, 296 N.W. 545 (1941), the insured was covered by a policy which contained an "accidental means clause", but which did not contain the so-called "exclusionary clause". Insured was a 50-year-old man in "good, robust, and strong physical condition". He had been attempting for two hours to load a wild horse into a truck. The doctor's opinion was that death resulted from "the tussle with the horse". The court said "The credibility of the different witnesses, including the medical experts, and the weight to be given to their testimony, were for the jury". *Jacobson, supra* 296 N.W. at 555.

■ Monica also contends that there was error in Finding of Fact No. 9, which reads as follows:

"9. The cause of death was an acute myocardial infarction, causing instant death. Mr. Kasper was an extremely obese person. The myocardial infarction resulted directly or indirectly from, or was contributed to, by bodily disease or infirmity of Robert Kasper. Sudden and strenuous exertion combined with the bodily infirmity caused the myocardial infarction and sudden death of Robert Kasper. The exertion entered into by Mr. Kasper was entirely voluntary (although seemingly demanded by the exigency of the fire), the excitement he no doubt experienced was involuntary but cannot be held to be accidental. Only the fire was an accident, and Mr. Kasper's viewing it (and fighting it) cannot be reasons to be accidental."

Her contention is basically that it was erroneous to conclude that the exertion required to fight the fire was voluntary and not accidental. Monica contends that this was a conclusion of law and not a finding of fact and is therefore subject to stricter scrutiny on review. Even if we were to disagree, the error would not be prejudicial because the trial court also found that the death was caused or contributed to by bodily disease or infirmity which would alone be dispositive of the case in accordance with the terms of each policy.

In *Wall v. Penn. Life Ins. Co.*, 274 N.W.2d 208 (N.D.1979), we discussed the meaning of the term "accident" as used in an insurance policy. In *Wall*, the plaintiff injured his back while doing strenuous farm work. He had been filling a grain drill with sixty-pound sacks of seed and had been doing so

all during the day he was injured. We there said, *Wall, supra* at 216:

"We specifically adopt the liberal definition of accident which is being followed in a growing number of jurisdictions. . . . We adopt the following definition of accident given by the trial court in *Continental Casualty Company v. Jackson*, 400 F.2d 285, 288 (8th Cir. 1968):

" 'The word "accident" as used in this case means happening by chance, unexpectedly taking place, not according to the usual course of things.

" 'You are instructed in this regard that if the insured does a voluntary act, the natural and usual, and to be expected result of which is to bring injury upon himself, then . . . [an injury] so occurring is not an accident. But *if the insured does a voluntary act, without knowledge or reasonable expectation that the result thereof will be to bring injury upon himself . . . then a bodily injury . . . is caused by accident.*' " [Emphasis in original.]

We distinguished but did not overrule *Grabau, supra,* where the insured walked 100 yards and fired his rifle three times. "In order for an injury to be caused by an accident, some unusually strenuous or extraordinary muscular action or exertion must occur" [*Wall, supra* 274 N.W.2d at 216].

As we said in *Slope Cty., Etc. v. Consolidation Coal Co.,* 277 N.W.2d 124, 127 (N.D.1979), quoting with approval from *Henzel v. Cameron,* 228 Or. 452, 463, 365 P.2d 498, 503 (1961):

" 'Whether a finding is a "finding of fact" or a "conclusion of law" depends upon whether it is reached by natural reasoning or by fixed rules of law. Where the ultimate conclusion can be arrived at only by applying rules of law the result is a "conclusion of law". . . .'

"Thus, it has been said that if facts are undisputed and only one, if any, inference can reasonably be drawn from those facts, the determination of that inference is a question of law."

We find that the trial judge made an erroneous application of law to the facts in determining that the death was not accidental in the instant case. There is no other conclusion which can be reached under the liberal definition of "accident" and our wording in *Wall, supra.* Labels placed upon the findings of the trial court are not conclusive, and it is the reviewing court which will determine whether a finding is a finding of fact or a conclusion of law. *Bladow v. Bladow,* 249 N.W.2d 917, 919 (N.D. 1977). However, this determination that the death was not accidental does not amount to prejudicial error because under the wording of the policy and the facts remaining after removing the erroneous matter, the result would still be in favor of the companies.

An insurance policy is a contract and the construction of a written contract to determine its legal effect is a question of law for the court to decide. *Stetson v. Blue Cross of North Dakota,* 261 N.W.2d 894, 896 (N.D.1978). Any ambiguity or reasonable doubt as to the meaning of an insurance policy, which is a contract of adhesion, is to be construed against the insurer and in favor of the insured. *Stetson, supra* 261 N.W.2d at 897; *Henson v. State Farm Fire & Cas. Co.,* 252 N.W.2d 200 (N.D.1977); *Mills v. Agrichemical Aviation, Inc.,* 250 N.W.2d 663 (N.D.1977); *Hughes v. State Farm Mut. Auto. Ins. Co.,* 236 N.W.2d 870, 885 (N.D.1976); *Scott v. National Travelers Life Insurance Co.,* 171 N.W.2d 749, 751 (N.D.1969); *Bekken v. Equitable Life Assur. Soc.,* 70 N.D. 122, 293 N.W. 200, 212 (1940); § 9–07–19, N.D.C.C. Nevertheless, when the language of an insurance policy is clear and explicit, the language should not be strained in order to impose liability on the insurer. *Stetson, supra* 261 N.W.2d at 897 (N.D.1978); *Tennefos v. Guarantee Mutual Life Co.,* 136 N.W.2d 155 (N.D.1965). We find in the instant case that there is no ambiguity in the language used in the policies.

Two of the policies, Provident's and Northwestern's, required the insured to submit "due proof" or "satisfactory proof"

to the company that the insured died from "bodily injury effected solely through external, violent, and accidental means". This requirement of due proof is common to many insurance policies. The Bankers policy did not require such proof because Bankers employs an investigative department and makes its own determination as to cause of death. The requirement of "due proof" is one of the conditions precedent to payment under the policy.

The only proof of cause of death submitted to the companies was a death certificate which shows "acute myocardial infarction" as the cause of death. Monica did not submit to the companies any evidence of Kasper's death by accidental means until the time that she instituted suit, almost five years after his death. It is true that during the time after Kasper's death and prior to Monica's instituting suit, there was an exchange of letters between Monica's attorney and the agents of the defendant companies but none of these letters contained any proof of accidental death other than the mere demand for payment under the double indemnity provisions. The fact that the companies promptly paid the regular death benefits is indicative of their good faith dealing in this matter.

 The plaintiff has the burden of proof as to the occurrence of an accident within the scope of coverage of the policy. Once the plaintiff has established coverage the burden shifts to the insurer to show the existence of a disease bringing it within an exception.[1] 10 Couch on Insurance 2d § 41:99 (1962). Prior to the lawsuit, even Monica's attorney conceded that additional information was necessary to perfect a claim under the double indemnity provisions, but no such additional information was ever submitted.

How much proof is "due proof"? In *Washington v. Metropolitan Life Insurance Company*, 372 Mass. 714, 363 N.E.2d 683 (1977), the plaintiff submitted a medical examiner's certificate of death to the com-

pany. The death certificate stated that the cause of death was "coronary sclerosis" and was a "natural" cause. The court found that "the information submitted to the insurer prior to trial was consistent with death from a heart attack" [*Washington v. Metropolitan Life Insurance Company, supra* 363 N.E.2d at 686]. The court said that due proof must be something more than mere notice to the company; there must be some evidence indicating the truth of the claim that death was caused solely by accidental means [*Washington, supra* 363 N.E.2d at 685]. "Due proof" does not require that the beneficiary make a prima facie case of death by accidental means, but it does require more than a bald assertion of entitlement to the "double" benefit.

 In a double indemnity insurance policy with an "exclusionary clause" and an "accidental means clause" requiring due proof, "mere notice of the death of the insured and that his death was accidental, without supplying the insurer with the data and particulars connected with the death, is not sufficient". 14 Couch on Insurance 2d § 49:676 (1965).

 Under the circumstances, we do not find that any of the companies waived the requirement of due proof by refusing to pay the "double" benefit because their correspondence with Monica's attorney indicated a desire to pay upon the submission of "due" or "satisfactory" proof. The following language from *Washington, supra* 363 N.E.2d at 687 is persuasive:

"Thus, as we have said, an insurer may have a good faith duty in particular circumstances to request additional information. If the initial proof is inconclusive but contains information reasonably suggesting that the claim may be valid, an insurer has the duty of further inquiry, at least to the extent of inviting the submission of further information in support of the claimant's position. We have long recognized that an insurer may request

---

1. *Compare Lovas v. St. Paul Ins. Companies,* 240 N.W.2d 53 (N.D.1976), where the court held that the insurer has the burden of proving the applicability of a "mysterious disappearance" exclusion in a policy insuring against the theft of hogs.

further proof and any additional submission should be considered in assessing whether the claimant submitted adequate proof under the policy. See *Traiser v. Commercial Travellers' E. Accident Ass'n*, 202 Mass. 292, 294–296, 88 N.E. 901 (1909).

"We think, however, that the response of the insurer in this case *did not constitute a waiver of the requirement of due proof* and that, in the circumstances, there was no obligation to state affirmatively that additional proof might have been submitted. *The only evidence submitted supported the medical conclusion that the death was not accidental. The plaintiff's submission did not merely leave the question in doubt; at the least it showed affirmatively a medical opinion that the cause of death was not entirely accidental. None of the facts submitted indicated that that medical opinion might be in error.* The letters sent by the insurer . . . did not foreclose the submission of additional information. Indeed, those letters explicitly pointed out the deficiency in the proof submitted and impliedly invited the submission of additional proof. . . . In this circumstance, the requirement of due proof was not waived, or otherwise eliminated, as an element of the plaintiff's case". [Emphasis added.]

All three of the policies in question provided that "the Company shall have the right and opportunity to have an autopsy made when it is not forbidden by law". No autopsy was ever performed on the body of Robert Kasper. Medical experts for both sides agreed that an autopsy would have made the actual cause of death definitely ascertainable. The experts agreed that without an autopsy all anyone could do would be to speculate as to the cause of death.

■ "The burden is on the insurer . . . to initiate proceedings for an autopsy under an accident policy providing for one." 14 Couch on Insurance 2d § 49:745 (1965). The demand for an autopsy must be made within a reasonable time. 14 *Couch, supra*

§ 49:745. In *Reardon v. Mutual Life Insurance Company of New York*, 138 Conn. 510, 86 A.2d 570, 573 (1952), the Court stated:

"[An] insurer must make the demand for an autopsy within a reasonable time after the death of the insured [or] . . within a reasonable time after it is put on notice of the probability that the beneficiary will claim that the insured's death was due to accident."

If an insurer makes a reasonable request for an autopsy and the consent of the beneficiary is withheld, the insurer may appeal to a court to determine the propriety of a request for an autopsy. *Pickens v. Equitable Life Assurance Society of United States*, 413 F.2d 1390, 1396 (5th Cir. 1969).

■ In the instant case, the companies made no demand for an autopsy. Monica contends that they waived their right to an autopsy when they failed to demand one upon receiving notice of death. It is true that the insurer bears the burden of initiating proceedings for an autopsy, but before that burden can arise, the insurer must be put on notice of the beneficiary's intention to make a claim for the double benefit. The trial court found that Monica "did not make any claim for accidental death benefits until several months after the decedent [Kasper] had been buried—the companies therefore had no reasonable opportunity to request or demand an autopsy". We agree with the trial court. In a case where all of the evidence available to the company points to death by natural causes, it would be manifestly unreasonable to require the company to demand an autopsy absent notice of a good faith claim to accidental death benefits.

All three of the policies involved on appeal contained an "accidental means" clause as well as an "exclusionary clause". An accidental means clause requires that death must result "directly and independently of all other causes" from bodily "injury effected solely through external, violent and accidental means". In some policies the accidental means clause appears alone, but in the three policies involved on appeal there was an additional "exclusionary clause".

The exclusionary clause is as follows: "This benefit does not cover death caused or contributed to directly or indirectly, wholly or partly, by: disease or bodily or mental infirmity . . .". It then goes on to list several other contributing causes excluded from coverage which are not relevant to this appeal.

The following excerpt from 10 Couch on Insurance 2d § 41:380 (1962) explains the distinction between the two clauses:

"*§ 41:380. Distinction between express exclusion clause and 'caused solely by accident' clause.*

"There is a distinction between an accident policy covering loss 'resulting directly, independently and exclusively' from other causes and a similar policy containing the additional phrase excluding disability 'wholly or in part, directly or indirectly, from disease or other bodily infirmities,' or phrases of like nature. The phrase 'resulting directly, independently and exclusively' refers to the efficient, substantial, and proximate cause of the disability at the time it occurs. On the other hand, *a policy containing the additional phrase set out above refers to another contributory cause, whether proximate or remote.* Where, under a policy containing only the first phrase, the accidental injury acts upon a pre-existing disease causing total disability which except for such disease would not have occurred, the injury is deemed to be the proximate cause of the disability entitling recovery. *But it is otherwise where the policy contains the additional phrase indicated above. Of course, the result would be otherwise in this latter situation where the disease resulted from the accidental injury or if the accidental injury caused the disablement independently of the disease.* Otherwise stated, where the policy covers accidental death resulting directly and independently of all other causes through external, violent, and accidental means, liability arises if the accident is the moving, sole, and proximate cause of death, even though a pre-existing disease or physical infirmity is a necessary condition to the result. However, *where the insurer's liability is further restricted by a clause avoiding liability where death results directly or indirectly from disease or from bodily or mental infirmity, it is not sufficient to create liability to establish a direct causal relation between the accident and the death or disability, but the plaintiff must show that the resulting condition was caused solely by external and accidental means, if the evidence points to a pre-existing infirmity or abnormality which may have been a contributing factor, the burden is upon him to produce further evidence to exclude this possibility.*" [Emphasis added.]

In the instant case, there seems to be no question but that the exclusionary clause stating "death caused or contributed to . . . by: disease or bodily . . . infirmity" would work to deny coverage. The trial court accepted the medical testimony that death was at least partially contributed to by preexisting bodily disease or infirmity. This is an application of the facts to the clear wording of the exclusionary clause.

Although there is a divergence of opinion, the cases which deny coverage because of a preexisting bodily infirmity are legion where the policy includes an exclusionary clause. In *Berger v. Travelers Insurance Company,* 379 Mich. 51, 149 N.W.2d 441, 442 (1967), the Michigan Supreme Court said that "such 'exclusionary' clauses necessarily *do preclude* recovery when death results from a preexisting disease or from a combination of accident and preexisting disease" [emphasis in original]. In *Berger,* the insured died soon after an automobile accident but the court held that an arteriosclerotic heart disease contributed to his death and, therefore, denied coverage. The Florida Court of Appeals took a similar position in *Nationwide Mutual Insurance Company v. Anglin,* 306 So.2d 147, 149 (Fla.App.1975), when it said:

". . . [W]hen an accident and a preexisting physical condition combine to bring about death, there will ordinarily be a question of fact if the policy provides for coverage whenever the death

occurs directly and independently of all other causes. If the policy also contains a provision excluding coverage where the death arises in part from disease or other bodily infirmity, the insurance company will be entitled to judgment as a matter of law whenever the undisputed facts show that disease materially contributed to the death."

*Accord Neeman v. John Hancock Mutual Life Insurance Co.,* 182 Neb. 144, 153 N.W.2d 448 (1967).

▪ An exclusionary clause will not operate to deny coverage where the accident is the sole cause of death, independent of a preexisting bodily infirmity. If the trial court had found that Kasper was in good physical condition and his exertion in fighting the fire was the sole cause of his death, then Monica would be entitled to the double indemnity benefits. *See Rankin v. United Commercial Travelers of America,* 193 Kan. 248, 392 P.2d 894, 901–02 (1964), wherein the court said:

> "We are forced to conclude that . . . where an able bodied man, *without apparent physical or health impairment,* dies of a heart attack *caused exclusively* from emotional strain, heat and physical exertion while engaged in fighting a pasture fire, the death is the result of bodily injury effected solely through external, violent and accidental means." [Emphasis added.]

Even though the *Rankin* court was interpreting the accidental means clause, under the facts we think the result would have been the same even with the addition of an exclusionary clause. *See* cases discussed and cited at 84 A.L.R.2d 270–81, for the proposition that accident must be the sole cause of death where there is a preexisting heart condition.

▪ In summary, where a policy contains only an accidental means clause, the finder of fact can determine that death resulted from the accident even though a preexisting condition contributed to the death. Where it is difficult to determine whether the accident or a preexisting disease or condition was the motivating or precipitating cause of death, it necessarily becomes a question of fact. *Long v. Railway Mail Ass'n,* 145 Neb. 623, 17 N.W.2d 675 (1945). This is consistent with our prior holdings in *Valenta v. Life Insurance Company of No. America,* 196 N.W.2d 393 (N.D. 1972); *Brinkman v. Mutual of Omaha Insurance Company,* 187 N.W.2d 657 (N.D. 1971); *Jacobson v. Mutual Ben. Health & Accident Ass'n,* 69 N.D. 632, 289 N.W. 591 (1940); *Druhl v. Equitable Life Assur. Soc.,* 56 N.D. 517, 218 N.W. 220 (1928). But where the policy also contains an "exclusionary" clause and it is found that a preexisting bodily infirmity contributed to the death of the insured, the court should enter judgment in favor of the company. *See Grabau v. Hartford Accident & Indemnity Company,* 149 N.W.2d 361 (N.D.1967), wherein we held that there could be no recovery under the policy because a preexisting bodily condition contributed to the death of the insured. Where the policy contains both an "accidental means clause" and an "exclusionary clause", and the accident alone causes death or the condition which brings about death without any contribution from a preexisting bodily condition, the beneficiary is entitled to recover the accidental death benefit. Courts should not, by strained construction, extend the coverage contracted for in a provision of an insurance policy for double indemnity where there is no ambiguity in the words used in the policy.

▪ The trial court found that the death of Kasper was contributed to by a preexisting heart condition. This finding was not clearly erroneous, and under a plain reading of the "exclusionary clause" in the policy, Monica Kasper is not entitled to recover the double indemnity benefits.

Judgment affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.