## No. 23528.

MARIE E. REED, ADMINISTRATRIX OF THE ESTATE OF SHER-
MAN C. REED, DECEASED *v*. UNITED STATES FIDELITY AND
GUARANTY COMPANY, A CORPORATION.
(491 P.2d 1377)

Decided December 27, 1971.     Rehearing denied January 17, 1972.

VINCENT CRISTIANO, for plaintiff in error.

HODGES, KERWIN & OTTEN, ARTHUR E. OTTEN, JR., for defendant in error.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

PLAINTIFF, Marie E. Reed, administratrix of the estate of her deceased husband, Sherman C. Reed, brought suit against United States Fidelity and Guaranty Company (U.S.F. & G.) on a Volunteer Fire Company accident policy insuring the members of the West Adams County Fire Protection District while on duty as firemen. The decedent was a member and acting as such at the time of his death.

The trial court, at the conclusion of the plaintiff's case, granted the defendant's motion to dismiss the complaint. The court in rendering its judgment of dismissal at the close of the plaintiff's evidence was acting within the provisions of C.R.C.P. 41(b) (1). We note that this rule contemplates that the court make findings of fact and conclusions of law in accordance with C.R.C.P. 52(a). The court here made no findings of fact. However, we note that in the instant case neither in the trial court nor

in the briefs here do the litigants disagree as to the basic facts. The disagreement between the parties relates to the interpretation of the insuring clause in the policy. The court in ruling as it did on the motion to dismiss, adopted the defendant's interpretation of the insuring clause, rather than that of the plaintiff, thus giving rise to an issue of law rather than fact.

In view of the fact that this case must be remanded for further proceedings, we elect in the interest of judicial economy and the guidance of the court on retrial, to review the issues of law relating to the interpretation of the insuring clause.

In order to undertake this task, it is necessary to have a factual background; therefore, we will assume the ultimate facts to be those which reasonably can be drawn from the plaintiff's evidence—the only evidence in the record at this stage of the litigation. We hasten to point out that the facts assumed for the purpose of discussing the law are not necessarily those which on remand the finder of the fact, be it the court or a jury, may determine to be true.

U.S.F. & G.'s policy insured against:

". . . *Loss* resulting directly and independently of all other causes from accidental bodily injuries. . . ."

The policy, by its terms, did not cover "any accident or loss caused or contributed to by: (1) bodily or mental infirmity," or (2) ". . . disease."

Decedent participated in fighting a fire on February 19, 1965, the day of his death. During the course of his activity he became ill and died on his way to the hospital. Other volunteers who were present testified that he was exposed to heavy black smoke which he inhaled.

An autopsy performed immediately after death found (1) "[c]oronary arteriosclerosis of prominent degree with evidence of very recent thrombotic occlusion of anterior descending branch of left coronary artery" and (2) "[e]vidence of effects of smoke inhalation in the tracheobronchial tree." The death certificate listed the

cause of death as "thrombosis, anterior branch of left coronary artery due to coronary arteriosclerosis of several years" and listed "smoke asphyxiation during fire fighting" as one of "other significant conditions contributing to death but not related to the terminal disease condition."

The testimony of two medical experts was introduced by the plaintiff. The first, the decedent's family doctor, testified that decedent was a 56-year-old man of apparently robust good health and that regular examinations over a course of years had given no indication of arteriosclerosis or heart disease. Both medical experts agreed (1) that the examinations and the autopsy showed a heart and circulatory function which was well within normal limits for a 56-year-old man, (2) that arteriosclerosis is a part of the normal aging process and that any normal 56-year-old man would have shown the same or a greater degree of arteriosclerosis than the deceased had shown, (3) that "but for" smoke inhalation, deceased would probably not have suffered a thrombosis, and (4) that "but for" arteriosclerosis, the deceased would probably not have suffered a thrombosis.

The medical testimony explained the effect of smoke inhalation on the body in this fashion:
"[It] would decrease the ability of the lung to transport oxygen to the bloodstream, thus with a build-up of carbon dioxide content in the bloodstream itself stimulating the heart and the lungs to marked over-exertion attempting to get more oxygen into the bloodstream . . .
". . . The heart would be deficient of oxygen, and the consumption of oxygen in the heart muscle itself is quite tremendous, and when there is a deficiency of it we finally get heart wall damage or heart muscle damage, in other words a coronary heart attack . . ."

At the close of plaintiff's evidence, defendant moved to dismiss on grounds (1) that no accidental death was shown and (2) that death was contributed to by a bodily infirmity or a disease. The trial court granted the motion.

In so doing, the trial court apparently held that although arteriosclerosis is a condition of the aging process, it was a cause contributing to the insured's death and brought *the loss* within the exclusion of the insuring clause.

Our precedents suggest that three basic principles are applicable to the construction of insurance contracts. They are (1) that in the case of ambiguity, insurance contract terms are to be construed most strongly against the insurer, *Coxen v. Western Empire*, 168 Colo. 444, 452 P.2d 16; *Assurance Society v. Hemenover*, 100 Colo. 231, 67 P.2d 80; (2) that terms in an insurance contract are to be given their meaning according to common usage, *New York Life Ins. Co. v. Mariano*, 102 Colo. 18, 76 P.2d 417; *Assurance Society v. Hemenover, supra;* and (3) that in case of ambiguity of any term, the court will look to the body of the contract for enlightenment. *Coxen v. Western Empire, supra.*

The two ultimate questions are: (1) Assuming that decedent had arteriosclerosis within normal limits for a man his age and that his death was precipitated by smoke inhalation in fighting a fire, could there have been an accident as that term is used in the policy? And (2) if so, was the insured's loss one which might have "result[ed] directly and independently of all other causes from [that accident]" and was not "caused or contributed to by: . . . bodily or mental infirmity, or . . . disease? . . ."

I.

The first question is answered in the affirmative. This court has interpreted terms of personal accident insurance policies according to the popularly accepted meaning following Mr. Justice Cordoza in his dissenting opinion in *Landress v. Phoenix M. L. Ins. Co.*, 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934, 90 A.L.R. 1382, wherein he endorsed the following language of Sanborn, J., in *Western Commercial Travelers' Association v. Smith*, 85 Fed. 401, 405:

". . . [A]n effect which is not the natural or probable

consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing . . . is produced by accidental means."

We embraced this principle in *Hemenover, supra,* and in *New York Life Ins. Co. v. Mariano,* 102 Colo. 18, 76 P.2d 417. Thus, viewing the evidence most favorably to the plaintiff, we conclude that the unforeseen exacerbation of his heart condition could have been an accidental injury.

## II.

The issue raised by the second question is a matter of first impression in Colorado. Counsel agree that there is a "split of authority." Our review of the cited authorities and the legion of cases annotated in 82 A.L.R.2d 611 and 84 A.L.R.2d 176, compels our agreement with this assessment.

These cases fall into two major groups. One group concerns itself with causal relationship which is described by terms which are the same as or similar to the contractual language of this case—" . . . resulting directly and independently of all other causes from accidental injuries. . . ."; the other group construes the terms "bodily . . . infirmity, or . . . disease. . . ."

In view of the direction we take, we now examine those cases which involve the construction of the terms "infirmity" and "disease." In this regard, all of these cases are markedly similar to the instant case. Indeed, most of them are concerned with arteriosclerosis and the peculiar metaphysical and semantic problem which inheres in a bodily condition which medical terminology identifies as a "disease" but which is a normal part of the aging process.

With the previously-stated principles in mind, the difficulty of the case dissipates. We note that both doctors testified that Mr. Reed's condition was well within

the normal limits for a 56-year-old man, that had he not inhaled smoke he could have looked forward to a normal life expectancy, and that arteriosclerosis was a part of the normal aging process. We also note that Mr. Reed's family doctor, his wife and his colleagues on the fire department agreed that prior to his accident, Mr. Reed was a man of apparently robust good health.

■ We do not believe that as a matter of law these facts describe a man who is "diseased" or "infirm" as those terms are used in common parlance, but, rather this is a question of fact to be determined by the trier of fact. Judge Cardozo in *Silverstein v. Metropolitan Life Ins. Co.*, 254 N.Y. 81, 171 N.E. 914, put it well when he stated that:

". . . In a strict or literal sense, any departure from an ideal or perfect norm of health is a disease or an infirmity. Something more, however, must be shown to exclude the effects of accident from the coverage of a policy. The disease or the infirmity must be so considerable or significant that it would be characterized as disease or infirmity in the common speech of men. *Eastern Dist. Piece Dye Works v. Travelers' Ins. Co.*, 234 N.Y. 441, 453, 138 N.E. 401, 26 A.L.R. 1505. 'Our guide is the reasonable expectation and purpose of the ordinary business contract.' *Bird v. St. Paul Fire & Marine Ins. Co.*, 224 N.Y. 47, 51, 120 N.E. 86, 87, 13 A.L.R. 875; *Goldstein v. Standard Accident Ins. Co.*, 236 N.Y. 178, 183, 140 N.E. 235, 236; *Van Vechten v. American Eagle Fire Ins. Co.*, 239 N.Y. 303, 146 N.E. 432, 38 A.L.R. 1115. A policy of insurance is not accepted with the thought that its coverage is to be restricted to an Apollo or a Hercules."

It appears to us that this policy was sold and accepted with the intent that it would cover accidental injuries to all the members of the fire department, not only those who were so young as not to have commenced arteriosclerotic degeneration.

". . . We have a right to assume, in fact we do not doubt, that the insurance company acted in good faith in issuing

[its] policy. The company intended a reasonable scope of insurance, and this can be accomplished by holding the company liable for accidents which, operating upon the physical system according to the natural and usual conditions of age, produce serious illness or death. The sclerosis was not the cause of death. . . ." (*United States Casualty Co. v. Thrush*, 21 Ohio App. 129, 152 N.E. 796.)

Finally, we note that numerous cases hold that arteriosclerosis, which is normal to the age of the victim, is one of those conditions which requires:

"A distinction . . . to be drawn between a morbid or abnormal condition of such quality or degree that in its natural and probable development it may be expected to be a source of mischief, in which event it may fairly be described as a disease or infirmity, and a condition [which is] abnormal or unsound when tested by a standard of perfection, yet so remote in its potential mischief that common speech would call it not disease or infirmity, but at most a predisposing tendency. . . ." (*Silverstein v. Metropolitan Life Ins. Co., supra.*)

A few of these cases are: *Prudential Ins. Co. v. Carlson*, 126 F.2d 607; *Aetna Life Ins. Co. v. Young*, 113 F.2d 601; *Preferred Acc. Ins. Co. v. Combs*, 76 F.2d 775; *Lickleider v. Iowa State Traveling Men's Ass'n*, 184 Iowa 423, 166 N.W. 363, 168 N.W. 884; *Moon v. Order of United Commercial Travelers*, 96 Neb. 65, 146 N.W. 1037; *McGrail v. Equitable Life Assur. Soc.*, 292 N.Y. 419, 55 N.E.2d 483; *Eisser v. Comm'l Travelers Mut. Acc. Ass'n*, 247 App. Div. 727, 285 N.Y.S. 266, *aff'd* 272 N.Y. 581, 4 N.E.2d 813; *U. S. Cas. Co. v. Thrush*, 21 Ohio App. 129, 152 N.E. 796; *Kelly v. Prudential Ins. Co.*, 334 Pa. 143, 6 A.2d 55; and *Pierce v. Pac. Mut. Life Ins. Co.*, 7 Wash. 2d 151, 109 P.2d 322. (*See also Notes*, 88 U.Pa.L.Rev. 853; for a thoughtful criticism of this approach, *see Comments*, 21 U.Chi.L.Rev. 266). We follow the philosophy expressed in these decisions.

Under this view of the contract, unless the plaintiff's evidence is disbelieved by the trier of the fact (there

576

is nothing in the record to indicate this), the trial court erred in dismissing the plaintiff's complaint at the close of the plaintiff's evidence.

Accordingly, the judgment is reversed and the cause remanded for new trial. Either party may demand a trial by jury if such demand is made within ten days from the date of the remand to the trial court.

MR. JUSTICE DAY and MR. JUSTICE ERICKSON concur in the result.