**Marion Stevens SMITH, III**

v.

**OMAHA INDEMNITY COMPANY.**

Court of Appeals of Tennessee, Eastern Section.

Feb. 20, 1976.

Certiorari Denied by Supreme Court July 26, 1976.

Goins, Gammon, Baker, Robinson & Grisham, Chattanooga, for appellant.

Atchley, Atchley & Cox, Chattanooga, for appellee.

OPINION

SANDERS, Judge.

The Defendant has appealed from a decree of the Chancery Court holding that death resulting from a heart attack was accidental death within the meaning of its insurance policy.

Marguerite McWhorter Bennett, now deceased, purchased a sickness and accident policy of insurance issued by the Defendant-Appellant, Omaha Indemnity Company. The policy was purchased at Love Field Airport in Chattanooga when the deceased was departing on an airline trip to Europe. As pertinent here, the policy provides for payment of $15,000.00 for accidental death occurring while the policy is in force.

The deceased returned from Europe and died of a heart attack while the policy was still in force.

The Plaintiff-Appellee, Marion Stevens Smith, III, who was the named beneficiary of the policy, filed suit in the Chancery Court of Hamilton County to recover the face amount of the policy plus a bad-faith penalty.

The Defendant contended the deceased's death was not accidental and there was no coverage.

The case was tried before the Chancellor who found the fatal heart attack was an accident as contemplated by the policy and awarded judgment for $15,000.00. However, he disallowed the bad-faith penalty.

Defendant has appealed and assigned the action of the Chancellor as error.

There is no dispute as to the facts in the case. On June 8, 1974, the deceased purchased the policy of insurance and delivered it to the Plaintiff. The term of the policy was for 24 days. The deceased returned from Europe some two or three days before the policy expired. She was 76 years of age and complained of being exhausted upon her return. The day following her return she went to the beauty parlor to have her

hair washed and set. After her hair had been washed she was placed under a hair dryer. Some 30 or 40 minutes later when one the beauticians went to remove the pins from her hair, she found her sitting under the dryer apparently asleep. However, she was dead, having passed away very quietly with a heart attack.

The policy of insurance provides for payment of $15,000.00 in case of accidental death and payment of $20.00 per day hospital expenses in the event of illness. As pertinent here, Part III of the policy provides: "*Specific Loss Benefits.* When the Insured sustains injuries which result in any of the following losses within one hundred days after the date of the accident, the Company will pay for loss of: Life. . . . " $15,000.00. Under Part I of the policy, it provides: "*Definitions.* 'Injuries' means accidental bodily injuries received while this policy is in force and resulting in loss independently of sickness and all other causes."

The proof shows the deceased had not been involved in an accident or received any personal injuries prior to her death. There was no contention by the Plaintiff that the deceased had been injured. There was a stipulation between the parties that a person the age of the deceased would be tired after a trip from Lisbon to Chattanooga in one day and, being tired, and at her age, would be more susceptible to a heart attack than a person who had not taken such a long trip.

The Chancellor, in his memorandum opinion, said: "There was not an 'accident or injury' at Pickett's Beauty Salon. The Court is very positive that those facts are true but it does not address itself to the legal meaning of whether or not her death was a result of a personal accident or sickness or injury. The plaintiff himself testified that she did not have an accident or injury while on the premises of Pickett's Beauty Salon. There is no argument about that whatsoever.

"Now, the Court must make its decision on whether or not a coronary, which was fatal, coming at the conclusion of a trip from Lisbon to Chattanooga when the lady was tired—she stated she was exhausted to the plaintiff, stated she was very tired to Mr. Lash, the beautician—and whether or not that fatal heart attack was in fact an accident or injury as contemplated by the plaintiff and as contemplated by the policy itself. . . . The Court is of the opinion that the fatal heart attack is and was an accident and injury as contemplated by the written policy and the defendant's understanding and the defendant's belief or position with regard to its belief, which was not spelled out in the written contract, is not controlling.

We cannot agree with the conclusion of the Chancellor. We think it is abundantly clear that before there can be a recovery under the policy death must have resulted from injuries received. Also, that death must have resulted from those injuries and independently of sickness and all other causes.

In construing insurance contracts, the words of the policy are to be given their usual and ordinary meaning. *Moore v. Life & Casualty Ins. Co.,* 162 Tenn. 682, 40 S.W.2d 403.

The Chancellor, in reaching his decision, was of the opinion the case of *Travelers Ins. Co. v. Ansley,* 22 Tenn.App. 456, 124 S.W.2d 37, was controlling in the case at bar.

Again, we cannot agree. In the *Ansley* case death was caused from chloral and bromide poisoning resulting from the cumulative effect of medicine which the deceased took voluntarily without foreseeing the fatal results. The court held this to be an accidental death. We find no correlation between the two cases.

We have not been cited to any case, nor have we found any, where death from a heart attack was held to be an accidental death. To so hold in the case at bar would be neither logical nor reasonable and would create chaos in the underwriting field of accident policies.

The assignments of error are sustained. The judgment of the Chancellor is reversed and the complaint is dismissed.

The cost of this appeal and the cost in the Trial Court are taxed to the Appellee.

PARROTT, P. J., and GODDARD, J., concur.