570 P.2d 1094 (1977)
Frank C. BOBIER, Plaintiff-Appellee,
v.
BENEFICIAL STANDARD LIFE INSURANCE COMPANY, Defendant-Appellant.
No. 76-740.
Colorado Court of Appeals, Div. II.
September 22, 1977.
As Modified on Denial of Rehearing October 27, 1977.
Certiorari Denied January 16, 1978.
*1095 Clark, Martin & Pringle, Bruce D. Pringle, Eric J. Pringle, Denver, for plaintiff-appellee.
Yegge, Hall & Evans, Edward H. Widmann, Denver, for defendant-appellant.
SMITH, Judge.
Plaintiff, Frank Bobier, brought this suit to recover on an accidental death policy issued by defendant, Beneficial Standard Life Insurance Company, which had covered his wife, Mrs. Betty Bobier. After conclusion of the evidence in a trial to a jury, the court directed a verdict for plaintiff, and defendant appeals. We reverse.
The policy in question provides for accidental death benefits if the insured dies within ninety days of suffering an injury. The policy defines "injury" as follows:
"`Injury' . . . means bodily injury caused by an accident occuring anywhere in the world while this policy is in force and resulting directly and independently of all other causes and loss covered by this policy."
According to the testimony of Mr. Bobier, the events surrounding the death of Mrs. Bobier were as follows: He was awakened in the middle of the night by a loud bumping noise. He looked over to find his wife on the floor with her head against the wall, and on the floor next to her head was a small amount of vomit. Mr. Bobier then called for an ambulance which arrived some minutes later, and within a half hour of her fall to the floor, Mrs. Bobier had arrived at Denver General Hospital. She was in a coma from which she never emerged. She died approximately two weeks later.
According to the testimony of Dr. Smail, a heart specialist called by the plaintiff as an expert witness, Mrs. Bobier died from pneumonia which had resulted from aspiration. Aspiration occurs when foreign material is inhaled and becomes lodged in the windpipe. Normally, according to Dr. Smail, a safety mechanism in the body prevents this material from entering the windpipe. It was Dr. Smail's theory that Mrs. Bobier had vomited and had inhaled some of the stomach contents into her lungs. He also noted that the deceased's hospital record revealed a condition of cardiac arrythmia at the time she entered the hospital. Arrythmia is essentially an irregular heartbeat which pumps little blood to the rest of the body.
According to two physicians who had tended to Mrs. Bobier at Denver General Hospital, she had indeed died from aspiration pneumonia. It was their belief, however, that the cardiac arrythmia had first stricken Mrs. Bobier and that following the arrythmic seizure, she had lapsed into a coma at which time she vomited and inhaled the material.
According to Dr. Smail Mrs. Bobier could never have survived the twenty minutes or so that it took to get to the hospital had she been stricken with the cardiac arrythmia from the outset.
Plaintiff's theory on the facts, therefore, was that Mrs. Bobier's aspiration was the accidental result of the normal bodily function of regurgitating, or, in the alternative, that it was induced by accidental meansa fall to the floor during the night. Defendant's theory was that the death ultimately resulted from a seizure of cardiac arrythmia, and that accident played no role in it.
On appeal defendant contends that the case should have been either dismissed for failure to prove that an accident or injury *1096 had occurred, or, at the very least, the matter should have been submitted to the jury. Error is also asserted on the grounds that Dr. Smail should not have been permitted to testify and give an opinion on facts not in evidence and to given an opinion without the use of hypothetical questions.

I.
The trial court's directed verdict here was based on the factual conclusion that the death of Mrs. Bobier is ultimately traceable to her banging her head on the floor when she fell. If this were the only conclusion which could be drawn from the evidence, such a decree would be justified. Pioneer Construction Co. v. Richardson, 176 Colo. 254, 490 P.2d 71 (1971). But the record amply supports alternate theories of the source of the decedent's final illnessi. e., cardiac arrythmia and regurgitationboth of which could be found to be unrelated to her fall. Such being the case, a directed verdict based on the single factual theory was not justified.
Plaintiff argues that the directed verdict in his favor is nonetheless still proper on the ground that all the factual theories presented by both sides of the case lead to a single conclusiondeath by accident. We disagree.

II.
As far as inhaling of matter into the lungs is concerned, plaintiff's contention that this could be found to be accidental appears to be a sound one. Although Colorado has heretofore not been faced with the issue of whether an accident may occur completely within the confines of the body, there is well reasoned support elsewhere for the proposition that it may. Jones v. Aetna Life Insurance Co., 439 S.W.2d 721 (Tex.Civ.App.1969); see Murphy v. Continental Casualty Co., 269 So.2d 507 (La.App.1972) Annot., 98 A.L.R.2d 318. Thus, if a jury were to find that the inhalation of material by Mrs. Bobier did not follow as the "natural or probable consequence" of her vomiting, and that thus it could not have been "reasonably anticipated," it could conclude that an "accident" was the cause of death. See Reed v. United States Fidelity & Guaranty Co., 176 Colo. 568, 491 P.2d 1377 (1971).
Contrary to the insurance company's contention, death by accident in Colorado is not restricted to cases in which the injury is initially incurred through accidental means. Rather, it applies as well to those situations in which an unusual or unanticipated result flows from a commonplace cause. Equitable Life Assurance Society v. Hemenover, 100 Colo. 231, 67 P.2d 80 (1937); see Reed, supra.
Defendant nonetheless claims that an eventeven a commonplace onewhich induced Mrs. Bobier's regurgitation would have to be proven before plaintiff could establish prima facie that an accident had occurred. We acknowledge that a preceding occurrence, such as overeating, may help a jury in determining whether a subsequent injury was accidental, but, we see no principled reason for gratuitously making this a "but-for" element in such cases. Regurgitation itself is an event with predictable circumstances and results that can be easily identified and held up as standards to measure any variations therefrom for indicia of "accident."
If the defendant had wished originally, as it now does on appeal, to restrict the coverage of the insurance policy to those accidents precipitated by external means only, it could easily have done so by contract. Travelers' Insurance Co. v. Murray, 16 Colo. 296, 26 P. 774 (1891); see Towner v. Prudential Insurance Co., 137 So.2d 449 (La.App.1969). See also Hemenover, supra (when any ambiguity exists, it is to be construed in favor of the insured). As the contract stands, it is enough that an accident of any nature was the predominant cause of the injury which led to Mrs. Bobier's death. See Continental Casualty Co. v. Maguire, 28 Colo.App. 173, 471 P.2d 636 (1970).

*1097 III.
Finally, plaintiff contends that even if cardiac arrythmia had been the source of Mrs. Bobier's death, it would nonetheless qualify as an accident because of the deceased's prior freedom from heart disease. We find no support in Colorado or elsewhere for such a bold proposition, and we reject it.
Without requiring the causal connection between a heart seizure and some other event, such as over-exertion or mental trauma, courts and juries would be at a loss to distinguish between the natural onset of a disease and an unexpected eventuality. See generally, Rankin v. United Commercial Travelers, 193 Kan. 248, 392 P.2d 894 (1954); Burr v. Commercial Travelers Mutual Accident Ass'n, 295 N.Y. 294, 67 N.E.2d 248 (1946). Cf. Denver v. Phillips, 166 Colo. 312, 443 P.2d 379 (1968); Industrial Commission v. Johnson Pontiac, Inc., 140 Colo. 160, 344 P.2d 186 (1959).
The jury, under the evidence here, might well have found that the cardiac arrythmia occurred first and that the aspiration and subsequent pneumonia were merely predictable resulting mechanisms which led to death. Alternatively, they might have concluded that the regurgitation, aspiration, and pneumonia were either unusual and improbable results of an arrythmia, or that they occurred independently. We must therefore reverse the trial court's judgment and remand the case to allow the jury to make such factual determinations as are permitted by the evidence.
As far as the use of the expert witness is concerned, the briefs indicate that both parties are now amply aware of the problems surrounding Dr. Smail's testimony. Such being the case, we doubt that these problems will reappear on the retrial, and we therefore find it unnecessary to address them here.
Judgment reversed and cause remanded for a new trial.
ENOCH and STERNBERG, JJ., concur.