**Lyman CARROLL, Petitioner,**

v.

**CUNA MUTUAL INSURANCE SOCIETY, Respondent.**

**No. 94SC161.**

Supreme Court of Colorado, En Banc.

April 24, 1995.

---

ing that benefits were payable to him as the sole beneficiary under a policy of accidental death insurance issued by the defendant, CUNA Mutual Insurance Society (CUNA), and insuring Mr. Carroll's wife, Marie Carroll. At issue was whether Mrs. Carroll's death, which resulted from a massive intracranial hemorrhage caused in turn by the rupture of a preexisting cerebral aneurysm during sexual intercourse with her husband, was a covered event under the policy. The district court determined that Mrs. Carroll's death was not caused by an accident as required by the policy and entered judgment for CUNA. The court of appeals affirmed on a different rationale, noting that the policy language required not only that death be caused by an accident but also that it must result directly and independently of all other causes. The court of appeals held that the circumstances of Mrs. Carroll's death did not meet this latter requirement because under the court's construction, the requirement is not satisfied "when the injury or death is due, even in part, to a preexisting bodily infirmity." *Id.* at 76. Although we interpret the relevant language in the policy more narrowly than did the court of appeals, we agree that as properly construed, CUNA's policy does not provide coverage for Mrs. Carroll's death. We therefore affirm the judgment of the court of appeals.

*I.*

This case arises from Lyman Carroll's claim for insurance benefits under a group accidental death and dismemberment policy issued by CUNA and covering Mr. Carroll's wife, Marie Carroll, as an "Insured Person." The insurance policy provided benefits for "bodily injury caused by an accident occurring while the Group Policy is in force as to the Insured Person and resulting directly and independently of all other causes in loss covered by the Group Policy." Upon review of the circumstances of Mrs. Carroll's death, CUNA refused payment. CUNA asserted that Mrs. Carroll's death was not caused by an "accident" and did not result "directly and independently of all other causes," as required by the terms of the insurance policy. Mr. Carroll then filed the present suit in El

Braden, Frindt, Stinar, Stimple & Stageman, L.L.C., Daniel B. Stageman, Colorado Springs, for petitioner.

Sherman & Howard, L.L.C., Leanne B. De Vos, Doran L. Matzke, Denver, for respondent.

Justice LOHR delivered the Opinion of the Court.

We granted certiorari to review the decision of the Colorado Court of Appeals in *Carroll v. CUNA Mut. Ins. Society,* 876 P.2d 75 (Colo.App.1994). The plaintiff, Lyman Carroll, sought declaratory relief determin-

Paso County District Court. He requested a declaratory judgment establishing his entitlement to benefits for Mrs. Carroll's death under the terms of the insurance policy. The case was tried to the court without a jury.

The circumstances of Mrs. Carroll's death are taken from the testimony of Mr. Carroll at trial. On March 22, 1990, Marie Carroll was a sixty-seven year old woman of generally good health who suffered from hypertension.[1] At approximately 9:00 in the evening of March 22, Marie Carroll and her husband began to engage in sexual intercourse. A short time later, as Marie Carroll approached orgasm, she leaned forward and fell to the floor. When Mrs. Carroll was arising from the floor she stated that she felt as if her head had exploded and that it was burning. She told her husband she was suffering from a severe headache.

That night and the next day Mrs. Carroll had trouble verbalizing and continued to feel unwell. Mrs. Carroll, however, went about her regular activities throughout the day. At approximately 9:00 in the evening on March 23, 1990, Mr. Carroll took Mrs. Carroll to the hospital. The attending physician determined that Mrs. Carroll was suffering from a massive hemorrhage in the left side of her brain. Later that evening, Marie Carroll slipped into a coma. The next morning, after examination, Mrs. Carroll was declared brain dead.

Dr. Randall Bjork, a neurologist, testified at the trial regarding the medical causes of Mrs. Carroll's death. He stated that Marie Carroll had died from a massive intracerebral hemorrhage. According to Dr. Bjork, Mrs. Carroll suffered this hemorrhage due to the rupture of an aneurysm[2] in her brain. The rupture occurred in part as a result of Marie Carroll's elevated blood pressure during intercourse. Dr. Bjork explained that hemorrhages occurring at the point of orgasm are a known phenomenon in the medical literature and occur at a frequency of approximately one in every 300,000 people

each year. Dr. Bjork further testified that the aneurysm probably had been present in Mrs. Carroll's brain for many years prior to the time of the rupture. He described an aneurysm as something like a "powder keg" or "time bomb." Almost anything, including ordinary events such as interviewing a baby-sitter or playing chess, can trigger its rupture. Dr. Bjork also testified that Marie Carroll's existing hypertension could have increased the likelihood that the aneurysm would rupture and the amount of hemorrhage resulting.

After Mr. Carroll had presented his case, CUNA moved for a judgment in its favor on the ground that Mr. Carroll had not proved his case by a preponderance of the evidence. The trial court granted CUNA's motion. The trial court found that Mrs. Carroll suffered from hypertension and an aneurysm in her brain prior to the incident in question. In addition, the trial court found that on the evening of March 22, 1990, during intercourse, Mrs. Carroll sustained elevated blood pressure on top of her existing hypertension. The court further found that the ruptured aneurysm occurred as part of Mrs. Carroll's orgasm and not as a result of her fall. The trial court determined that the rupture of the aneurysm had caused Mrs. Carroll's death and that the rupture could have occurred at any point during normal, reasonable, everyday activity. After noting that the insurance policy did not define the term "accident," the trial court relied on the case of *Bobier v. Beneficial Standard Life Ins. Co.*, 40 Colo. App. 94, 570 P.2d 1094 (1977), for a definition of that term. *Bobier* interpreted the term "accident" to include situations in which an unusual or unanticipated result flows from a commonplace cause. *Id.* 570 P.2d at 1096. The trial court found that the circumstances of Mrs. Carroll's death did not constitute an accident. In particular, the trial court held that "the rupture of the aneurysm is a totally separate intervening cause which could have occurred at any time. It does not flow in any sense of the imagination from the common-

1. Hypertension denotes abnormally high blood pressure. Webster's Ninth New Collegiate Dictionary 593 (9th ed. 1989).

2. Webster's Dictionary defines an aneurysm as "a permanent abnormal blood-filled dilation of a blood vessel resulting from disease of the vessel wall." Webster's Ninth New Collegiate Dictionary 85 (9th ed. 1989).

place cause of intercourse." Thus, the trial court ruled that Mr. Carroll had failed to meet his burden of proving by a preponderance of the evidence that Mrs. Carroll's death was a covered event under the insurance policy.

Mr. Carroll appealed the trial court's judgment to the Colorado Court of Appeals. The court of appeals affirmed the trial court but did so on the basis of a different rationale. The court of appeals acknowledged that the *Bobier* definition of accident was controlling and that the definition could encompass the circumstances of the present case. The court of appeals noted, however, that the insurance policy, besides requiring that the injury be caused by an accident, also required that the injury "result directly and independently of all other causes." *Carroll,* 876 P.2d at 76. The court of appeals held that this requirement precluded coverage "when the injury or death is due, even in part, to a preexisting bodily infirmity." *Id.* Thus, because Mrs. Carroll's death was caused in part by her preexisting aneurysm and hypertension, the court of appeals held that her death was not caused "directly and independently of all other causes."

Mr. Carroll sought review of the court of appeals' decision by this court. We granted certiorari to determine:

> Whether the court of appeals erred in interpreting the clause in an accidental death and dismemberment insurance policy, "directly and independently of all other causes," to preclude coverage for any injury or death that is "due, even in part, to a preexisting bodily infirmity" such as Mrs. Carroll's condition.

We now hold that the court of appeals' construction of the phrase "directly and independently of all other causes" to preclude coverage when the injury or death is due even in part to a preexisting bodily infirmity was unduly narrow. Instead, we conclude that this phrase means that the accident must be the predominant cause of injury in order for the injury to be compensable. Because the trial court's findings establish that Mrs. Carroll's death was predominantly caused by her preexisting aneurysm, we hold that the insurance policy did not cover Mrs. Carroll's death. Therefore, we affirm the court of appeals' judgment but do so by adopting a different construction of the language of the policy.

## II.

The accidental death policy that CUNA issued to Mr. Carroll defines a covered "injury" as follows:

> *Injury* means bodily injury caused by an accident occurring while the Group Policy is in force as to the Insured Person and resulting directly and independently of all other causes in loss covered by the Group Policy.

For an injury to be compensable under this policy it must be caused by an accident and result directly and independently of all other causes. We first address whether Mrs. Carroll's injury was caused by an accident.[3]

The CUNA policy does not define the term "accident." Relying on the Colorado Court of Appeals' decision in *Bobier v. Beneficial Standard Life Ins. Co.,* 40 Colo.App. 94, 96, 570 P.2d 1094, 1096 (1977), Mr. Carroll maintains that his wife's death was caused by accident because it was an "unusual or unanticipated *result* [flowing] from a commonplace cause." (Emphasis in original). We agree.

When interpreting insurance contracts, we strive to define terms in accordance with their commonly accepted meanings. *Reed v. United States Fidelity and Guaranty Co.,* 176 Colo. 568, 572, 491 P.2d 1377, 1379 (1971); *New York Life Ins. Co. v. Mariano,* 102 Colo. 18, 20, 76 P.2d 417, 417 (1938); *Equitable Life Assurance Society v. Hemenover,* 100 Colo. 231, 236, 67 P.2d 80, 81 (1937). We have adopted the common meaning of words in construing insurance contracts to

---

3. Although this issue is not comprehended within the issue on which we granted certiorari, it is necessary to consider it for a full resolution of the case. The insurance policy provision at issue in the present case must be read as a whole in order to understand the meaning of its parts. In order to interpret whether an injury was caused by accident directly and independently of all other causes, one must first determine what constitutes an "accident" under the policy. Both parties recognized this necessity and argued the issue in their briefs and at oral argument.

ensure that the reasonable expectations of an ordinary individual purchasing the contract will be fulfilled. In addition, we have also consistently construed ambiguous terms in an insurance contract against the insurer. *Reed,* 176 Colo. at 572, 491 P.2d at 1379; *Coxen v. Western Empire Life Ins. Co.,* 168 Colo. 444, 447, 452 P.2d 16, 17 (1969).

Courts have had difficulty crafting a definition of the term "accident" that will fairly apply to all contingencies.[4] When considering this problem some courts have attempted to distinguish between accidental means and accidental results. The basis for this distinction is the relationship between cause and effect. Under the accidental means test, the precipitating cause of the injury must be accidental or unintended. This test encompasses one common understanding of the term accident as an unexpected action or event, such as a slip or a fall, that then causes injury. Under the accidental results test, only the injury, not the precipitating cause, must be unexpected for the injury to be accidental.

Courts strictly applying the accidental means test have held that death or injury does not result from an accident or accidental means within the terms of an accident insurance policy where it is the natural result of the insured's voluntary act, unaccompanied by anything unforeseen except the death or injury. *See, e.g., Smith v. Continental Casualty Co.,* 203 A.2d 168 (D.C.1964) (insured who died from a heart attack after exerting himself in performance of his regular duties as an engineer did not die of an accident because no accident interfered with his movements); *Gordon v. Metropolitan Life Ins. Co.,* 256 Md. 320, 260 A.2d 338 (1970) (insured who died after injecting himself with heroin did not die of an accident because his movements were intended and unimpeded); *Linden Motor Freight Co., Inc. v. Travelers Ins. Co.,* 40 N.J. 511, 193 A.2d 217 (1963) (insured who died of heart attack after voluntarily picking up seven or eight cartons weighing sixty-three pounds each did not die of an accident because nothing unforeseen or unexpected happened except for the resulting injury); *Evans v. Metropolitan Life Ins. Co.,* 26 Wash.2d 594, 174 P.2d 961 (1946) (insured who died of a heart attack due to arteriosclerosis after pushing car up slight incline did not die of an accident); *see also* Kristine Corelier Karnezis, Annotation, *Heart Attack Following Exertion or Exercise as within Terms of Accident Provision of Insurance Policy,* 1 A.L.R. 4th 1319, 1332–39; Annotation, *Rupture of Blood Vessel Following Exertion or Exercise as within Terms of Accident Provision of Insurance Policy,* 35 A.L.R.2d 1105, 1111–14; 1A John A. Appleman and Jean Appleman, *Insurance Law and Practice* § 360 (1981) (hereinafter, Appleman).

Commentators have criticized the distinction between accidental means and accidental

---

4. Some courts have eschewed the task of developing a comprehensive definition of the term "accident." Rather, these courts have applied the "common understanding" of that term to a particular set of facts in order to determine whether the situation was covered by an accidental injury insurance policy. In *Botts v. Hartford Acc. & Indem. Co.,* the Oregon Supreme Court stated that "[t]he problem arises from an erroneous impression that there is one all-encompassing definition of 'accident' or 'accidental' without regard to the particular factual circumstance in which the meaning of the terms is brought into question." 284 Or. 95, 585 P.2d 657, 660 (1978). The Oregon Supreme Court went on to state a general rule for cases in which an insured dies of an on-the-job heart attack. It held that courts when considering whether heart attacks that occur while the insured is working are covered by an accident insurance policy must determine whether "the job-related activity leading to a victim's heart attack was abnormal and unusual, taking into consideration the ordinary requirements of his job performance." *Id.* 585 P.2d at 661. Judge Posner took a similar approach in *Senkier v. Hartford Life and Acc. Ins. Co.,* 948 F.2d. 1050 (7th Cir.1991). Judge Posner stated, "A lay person has a clear if inarticulate understanding of the difference between an accidental death and a death from illness, and that understanding will not be altered or improved by head-spinning judicial efforts at definition...." *Id.* at 1053. In *Senkier,* the insured died when an intravenous feeding tube detached and pierced his heart in the course of hospitalization for treatment of Crohn's Disease. The court held that "when you [an insured] die from the standard complications of standard medical treatments you don't, it seems to us, die in or because of an accident; your death is the result of illness." *Id.; see also Smith v. Omaha Indem. Co.,* 540 S.W.2d 248 (Tenn.Ct.App.1976) (holding as a matter of law death from a heart attack is not an accident; heart attack had followed return by elderly person from exhausting European trip).

results as illusory and contrary to the normal expectations of the average policy holder. The basis for the criticism is the difficulty of distinguishing between voluntary and involuntary acts. Appleman states the difficulty as follows:

> Almost every action we take has some element of design; if we drive an automobile upon the highway, where another collides with us, could this not have been foreseeable, or at least within the realm of potential so far as the "means" were concerned? Every instance where a person walks, or jumps, and slips or falls, comes within a like category. To permit a rigid construction of such expressions is to permit a deception to be practiced upon the public, . . . .

1A Appleman § 363, at 492.

The modern trend is to reject the distinction between accidental means and accidental results when considering whether a particular death or injury is accidental. *See* John D. Ingram and Lynne R. Ostfeld, *The Distinction Between Accidental Means and Accidental Results In Accidental Death Insurance*, 12 Fla.St.U.L.Rev. 1, 9 (1984) (hereinafter, Ingram and Ostfeld). Under this view, the unexpected consequences of an individual's behavior provide the "accidental element" for purposes of an insurance policy.[5] *See, e.g., Taylor v. John Hancock Mut. Life Ins. Co.*, 11 Ill.2d 227, 142 N.E.2d 5, 6 (1957) (accidental means is synonymous with accidental results and is defined as something that happens "by chance or fortuitously, without intention or design, and which is unexpected, unusual and unforeseen."); *Murphy v. Travelers Ins. Co.*, 141 Neb. 41, 2 N.W.2d 576 (1942) (when an unusual, unexpected and unforeseen injury results from an intentional act of the person injured, ensuing injury is caused by accidental means though no slip or mishap occurred; when provisions of insurance policy are considered in ordinary and popular sense, distinction between accidental result and accidental means cannot be said to exist); *Vallejos v. Colonial Life & Acc. Ins. Co.*, 91 N.M. 137, 571 P.2d 404 (1977) (accidental means and accidental results coterminous); *Beckham v. Travelers Ins. Co.*, 424 Pa. 107, 225 A.2d 532 (1967) (court expressly abandoned distinction between accidental means and accidental results); *Republic Nat. Life Ins. Co. v. Heyward*, 536 S.W.2d 549 (Tex.1976) (opinion rejected distinction between accidental means and accidental results—injury is an accident if it would not ordinarily follow from action or occurrence that caused the injury).[6]

The rejection of the distinction between accidental means and accidental results was first articulated by Justice Cardozo in his dissent in *Landress v. Phoenix Mut. Life Ins. Co.*, 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934 (1934). In *Landress*, the insured died after suffering sunstroke. The majority stated that since the insured voluntarily exposed himself to the sun and there were no unforeseen intervening causes, the death was not caused by accidental means. *Id.* at 496, 54 S.Ct. at 462. Justice Cardozo stated in an oft-quoted passage that "[t]he attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog." *Id.* at 499, 54 S.Ct. at 463 (Cardozo, J., dissenting). Justice Cardozo asserted that if the court considered the result accidental, as death from sunstroke would be, then the means must be accidental also. *Id.* at 501, 54 S.Ct. at 464

---

**5.** In determining whether a certain result is accidental, it is customary to look at the casualty from the point of view of the insured, to see whether, from the insured's point of view, it was unexpected, unusual, and unforeseen. 1A Appleman § 360, at 452–53.

**6.** Some courts that have abolished the distinction between accidental means and accidental results may make an exception in cases involving overexertion or regular daily activities. *See* Ingram and Ostfeld at 23; *see also Benante v. Allstate Ins. Co.*, 477 F.2d 553 (5th Cir.1973) (insured who died of a heart attack after running to catch a plane did not die of an accident); *Miller v.*

*Prudential Ins. Co.*, 183 Kan. 667, 331 P.2d 310 (Kan.1958) (insured who died of heart attack while undertaking normal employment duties on oil rig did not die of an accident because no slip, mishap, extraneous force, unusual occurrence or unforeseen development took place at any time in performance of insured's work); *Grabau v. Hartford Acc. & Indem. Co.*, 149 N.W.2d 361 (N.D.1967) (insured who died from rupture of congenital aneurysm after firing firearm while hunting did not die of an accident because no unforeseen, unexpected, unusual, unintentional or involuntary muscular effort occurred).

(Cardozo, J., dissenting). He further quoted with approval the definition of accident set forth as follows in *Western Commercial Travelers' Ass'n. v. Smith:*

> An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing under the maxim to which we have adverted, is produced by accidental means....

*Landress,* 291 U.S. at 501 n. 2, 54 S.Ct. at 464 n. 2 (Cardozo, J., dissenting) (quoting *Western Commercial Travelers' Ass'n. v. Smith,* 85 F. 401, 405 (8th Cir.1898)). Thus, under this definition, as long as the resulting injury or death is unexpected, unintended, and unforeseeable then the injury or death is accidental.

In *Reed v. United States Fidelity and Guaranty Co.,* we adopted Justice Cardozo's reasoning in *Landress* and rejected the distinction between accidental means and accidental results. 176 Colo. at 572, 491 P.2d at 1380. In addition, we adopted the definition of accident as quoted above from the *Western* case. *See also Equitable Life Assurance Society,* 100 Colo. at 235, 67 P.2d at 81–82. The insured in *Reed* was a firefighter. While fighting a fire, he was exposed to black smoke. During the course of this activity, the insured became ill and died of a heart attack on the way to the hospital. *Reed,* 176 Colo. at 570; 491 P.2d at 1379. The administratrix of his estate brought an action against the insurer on the insured's accidental death policy. The trial court granted the insurer's motion to dismiss at the conclusion of the plaintiff's case. *Id.* at 569, 491 P.2d at 1378.

We held that, viewing the evidence most favorably to the plaintiff, the "unforeseen exacerbation of his heart condition could have been an accidental injury." *Id.* at 573, 491 P.2d at 1380. Thus, although the insured undertook voluntary activity that was part of his normal employment, we held that his injury could have resulted from an accident, with the result that the motion to dismiss was improperly granted.

The Colorado Court of Appeals in *Bobier v. Beneficial Standard Life Ins. Co.,* 40 Colo. App. 94, 570 P.2d 1094 (1977), interpreted the term accident as used in an accidental death insurance policy similar to the one at issue in this case. In *Bobier,* the insured died from pneumonia as a result of aspiration. The aspiration occurred when she inhaled her own vomit during an incident in which she fell to the floor in the middle of the night. The insured's husband brought suit against the insurance company that had issued an accidental death policy covering the insured. At the conclusion of the evidence, the trial court directed a verdict for the plaintiff. The Colorado Court of Appeals reversed.

There was some dispute in the evidence as to what caused the aspiration. The insurance company presented evidence that the insured had cardiac arrhythmia, and that the cardiac arrhythmia caused an arrhythmic seizure which then caused the aspiration. *Bobier,* 40 Colo.App. at 95, 570 P.2d at 1095. The plaintiff claimed that the aspiration either was the unusual or unanticipated result of the normal bodily function of regurgitating or that it was induced when the insured fell to the floor. *Id.* The court of appeals, citing *Hemenover* and *Reed,* defined accident to include an unusual or unanticipated result flowing from a commonplace cause. *Id.* at 96, 570 P.2d at 1096. The court of appeals reasoned that "if a jury were to find that the inhalation of material by Mrs. Bobier [the insured] did not follow as the 'natural or probable consequence' of her vomiting, and that thus it could not have been 'reasonably anticipated,' it could conclude that an 'accident' was the cause of death." *Id.*[7] Alterna-

---

7. The court also suggested other sequences of events and causation that a jury could have found and that would have led to particular

tively, if the jury were to find "that the cardiac [arrhythmia] occurred first and that the aspiration and subsequent pneumonia were merely predictable resulting mechanisms which led to death," the jury could have concluded that Mrs. Bobier's death was not accidental. *Id.* at 97, 570 P.2d at 1097. Because there was evidence to support both the plaintiff's theories and those of the defendant, the court of appeals reversed the directed verdict entered for the plaintiff.

■ We reaffirm our adherence to the definition of accident as set forth in footnote two of Justice Cardozo's dissenting opinion in *Landress* and adopted by us in *Reed. See supra* at pp. 751–752. The distinction between accidental means and accidental results is too illusory to be useful. The ordinary purchaser of an insurance policy is probably unaware of the distinction between these concepts. An unanticipated or unusual result flowing from a commonplace cause may be an accident. Although this definition is broad and could in the extreme bring about results inconsistent with common understanding, we believe that insurance companies wishing to avoid the consequences of the broadly inclusive definition of accident in *Reed* must include limiting language readily comprehensible by the ordinary purchaser. This position is further bolstered by the fact that the definition of accident that we reaffirm today has been the law in this state for over twenty years. Insurance companies have had ample time to devise language that properly balances the actuarial risk of liability with the insurance premiums they charge consumers. Thus, we hold that a voluntary act that causes an unforeseeable, unintended, or unexpected result can be considered an accident.

Therefore, we agree with Mr. Carroll that Mrs. Carroll's death was accidental under the terms of CUNA's insurance policy. The trial court found that during intercourse Mrs. Carroll experienced elevated blood pressure on top of her preexisting hypertension. The trial court also found that the rupture of

Mrs. Carroll's aneurysm occurred as part of the orgasm she experienced during sexual intercourse. The clear implication of these findings is that Mrs. Carroll's voluntary participation in sexual intercourse with her husband contributed in part to her death. Death was certainly not an expected, intended, or foreseeable result of intercourse. We therefore find that under the definition of accident adopted in *Reed* and reaffirmed in this opinion, Mrs. Carroll's death was an accident. Thus, Mr. Carroll has satisfied the first requirement for recovery under the insurance policy.

### III.

■ We now consider the second requirement for recovery under the CUNA insurance policy. Under the insurance policy, to be compensable, the injury not only must be caused by accident but also must result directly and independently of all other causes in loss covered by the policy. The court of appeals interpreted the phrase "directly and independently of all other causes" to preclude coverage when the injury or death is due even in part to a preexisting bodily infirmity. *Carroll,* 876 P.2d at 76. Mr. Carroll argues that the phrase "directly and independently of all other causes" is ambiguous and should be construed against the insurer. Mr. Carroll further asserts that another panel of the court of appeals properly construed this phrase in *Continental Casualty Co. v. Maguire,* 28 Colo.App. 173, 471 P.2d 636 (1970), to require only that the accident be the predominant cause of the injury. According to Mr. Carroll, the mere existence of a bodily infirmity should not automatically preclude recovery. We agree.[8]

In *Maguire,* the insured suffered from a recurring mental illness diagnosed as schizophrenic reaction, paranoid type. The insured was sitting in his house with a shotgun across his lap. When his wife approached, he threatened her with the gun. She then called the police. *Id.* at 176, 471 P.2d at 637. The police officers used canisters of tear gas

---

conclusions as to whether Mrs. Bobier's death was accidental.

8. CUNA agrees with the predominant cause standard as well. It argues, however, that by applying this standard the result reached by the court of appeals should be affirmed. *See infra* part IV.

to force the insured from the house. One canister of tear gas exploded in the insured's face, causing injury. *Id.* The insured brought an action against his insurer for accidental injury insurance benefits. The policy allowed recovery only for injuries resulting from an accident "directly and independently of all other causes." *Id.* at 178, 471 P.2d at 638. The insurance company argued that the insured's injuries were not covered by the insurance policy because the insured's mental illness was another cause of the injury. The court of appeals interpreted the phrase "directly and independently of all other causes" to require that the accident be the predominant cause of the loss. *Id.* at 179, 471 P.2d at 638.[9] The trial court had found that the insured's injuries were caused by accident and compensable, and the court of appeals affirmed the judgment.

The court of appeals' construction in *Maguire* of the phrase "directly and independently of all other causes" to require that the accident be the predominant cause of loss is consistent with our opinion in *Reed v. United States Fidelity and Guaranty Co.*, 176 Colo. 568, 491 P.2d 1377 (1971). In *Reed*, we interpreted a liability clause more restrictive than the one at issue in the present case.[10] In *Reed*, the insured died from a heart attack sustained while fighting a fire. The insured, a fifty-six year old man, also suffered from arteriosclerosis, a normal condition for his age. The insurance company argued that the insured's arteriosclerosis constituted a disease or bodily infirmity that precluded coverage for the death under the insurance policy. We held that since arteriosclerotic degeneration is a normal part of the aging process, the insured as a matter of law could not be considered diseased or infirm within the meaning of the insurance policy. *Reed*, 176 Colo. at 574, 491 P.2d at 1380. We recognized that precluding coverage because of infirmity caused by the normal aging process would limit the scope of recovery under these accidental injury insurance policies to an extent inconsistent with a policy holder's reasonable expectations and the insurance contract's purposes. *Id.* at 575; 491 P.2d at 1380. We quoted the following statement by Chief Judge Cardozo in *Silverstein v. Metropolitan Life Ins. Co.*, 254 N.Y. 81, 171 N.E. 914, 915 (1930):

> In a strict or literal sense, any departure from an ideal or perfect norm of health is a disease or an infirmity. Something more, however, must be shown to exclude the effects of accident from the coverage of a policy. The disease or the infirmity must be so considerable or significant that it would be characterized as disease or infirmity in the common speech of men.

*Reed*, 176 Colo. at 574, 491 P.2d at 1380. No individual is completely free from the normal degeneration that might cause weakness or susceptibility to an accident. Requiring an individual to be highly fit in order to recover under an accidental insurance policy would effectively nullify the value of these policies for an ordinary purchaser.

Thus, the court of appeals' holding that the insurance policy in this case precludes liability any time the injury or death is due even in part to a preexisting illness or disease sweeps too broadly. The court of appeals' holding would deny recovery even if the disease is a remote cause of the injury. This is contrary to the expectations of the average policy holder and to the policies discussed in *Reed*. *See also* 1A Appleman § 362, at

---

9. Another panel of the court of appeals indirectly adopted this same interpretation in *Bobier*, 40 Colo.App. at 97, 570 P.2d at 1096 (absent insurance contract language restricting coverage to accidents precipitated by external means only, "it is enough that an accident of any nature was the predominant cause of the injury" (citing *Maguire*)).

10. Courts group limitation clauses in accidental injury liability insurance policies into two categories. The first is similar to the clause at issue in this case and is referred to as a "limited coverage clause." The second is similar to the clause in *Reed* and generally states that the injury in question shall not be caused wholly or in part, directly or indirectly, by any bodily or mental disease, defect or infirmity. Courts have referred to this kind of clause as an "exclusionary clause" and consider it to be more restrictive of coverage than the limited coverage clause. *See Mahon v. American Cas. Co.*, 65 N.J.Super. 148, 167 A.2d 191, 196–201 (App.Div.1961); *see also* Annotation, *Pre-existing Physical Condition as Affecting Liability under Accident Policy or Accident Feature of Life Policy*, 84 A.L.R.2d 176, 199–208 (1962).

489–90. We hold, therefore, that the court of appeals' decision in this case excessively limits recovery under accidental injury and death insurance policies.[11] The proper interpretation of the clause "directly and independently of all other causes" is that contained in *Maguire.* Benefits under accidental death or injury policies of the type at issue here are recoverable as long as one can show that the accident is the predominant cause of the loss.

Other jurisdictions have interpreted the phrase "directly and independently of all other causes" in accidental injury insurance policies to mean that the accident must be the predominant cause of the injury.[12] *See, e.g., Quesinberry v. Life Ins. Co. of North America,* 987 F.2d 1017, 1028 (4th Cir.1993) (interpreting phrase "loss resulting directly and independently of all other causes from bodily injury caused by accident" to preclude recovery only when the preexisting condition, predisposition, or susceptibility to injury substantially contributed to the disability or loss); *Burgett v. Stuyvesant Life Ins. Co.,* 236 So.2d 306, 308 (La.Ct.App.1970) (interpreting phrase "resulting directly and independently of all other causes, from an accident" to require plaintiff to prove by a preponderance of the evidence that the accident was the predominant cause of the injury); *Mahon v. American Casualty Co.,* 65 N.J.Super. 148, 167 A.2d 191, 201 (App.Div.1961) (interpreting phrase "resulting directly and independently of all other causes" to mean that the accidental injury as opposed to the contributing disease or bodily condition is the proximate or predominant cause of the disability); *see also* 1A Appleman § 362, at 482–91.

Other courts have interpreted the phrase "directly and independently of all other causes" to require that the accident be the direct or proximate cause of the injury. *See, e.g., INA Life Ins. Co. v. Brundin,* 533 P.2d 236, 245 (Alaska 1975) (phrase "directly and independently of all other causes" requires instruction to jury that accident must be proximate cause of death); *Hughes v. Provident Mut. Life Ins. Co.,* 258 S.W.2d 290, 294 (Mo.Ct.App.1953) (phrase "independent of all other causes" refers to proximate or direct, not remote, causes). Courts when using the word "proximate cause," however, seem to intend no more than to distinguish between remote and predominant causes. When discussing this issue, Appleman in his treatise on insurance states, "The weight of authority is that such terms [*i.e.,* "sole and proximate cause"] have no greater meaning than the usual rule requiring that the injury be a predominant factor in causing the loss." 1A Appleman § 362, at 490–91. Similarly, the New Jersey Superior Court has equated the terms proximate cause and predominant cause, stating:

> In what seems to us a preponderance of American jurisdictions, the test is whether the accidental injury, as contrasted with the contributing disease or bodily condition, is the proximate or predominant cause of the disability or loss, sometimes additionally qualified as the active, efficient, dominant, originating, or direct cause.

*Mahon,* 167 A.2d. at 201.

We, therefore, interpret the expression "directly and independently of all other causes" to require that the accident be the predominant cause of injury. The court of appeals' statement that this phrase precludes recovery whenever the injury is due, even in part, to a preexisting bodily infirmity is incorrect.

*IV.*

■ We now consider whether the trial court properly granted judgment for CUNA

---

11. This is especially so because CUNA has used the less restrictive "limited coverage clause" in its policy rather than the more restrictive "exclusionary clause." *See supra* p. 754 and note 10.

12. Some courts have interpreted the phrase "directly and independently of all other causes" to preclude liability whenever the loss results in part from a preexisting condition. *Winchester v.*

*Prudential Life Ins. Co. of America,* 975 F.2d 1479 (10th Cir.1992) (applying Utah law); *Bewley v. American Home Assurance Company,* 450 F.2d 1079 (10th Cir.1971) (applying Oklahoma law); *Hume v. Standard Life and Accident Ins. Co.,* 365 P.2d 387 (Okla.1961). We reject the reasoning in these cases as inconsistent with our holding in *Reed. See supra* pp. 753–754.

at the conclusion of the plaintiff's case in light of our holding that to recover under the insurance policy Mr. Carroll must prove by a preponderance of the evidence that the predominant cause of Mrs. Carroll's death was an accident. In its findings and conclusions, the trial court wrote:

> The Court also finds, based on the testimony of plaintiff's expert, that the rupture of this preexisting aneurysm on March 22, 1990 caused Mrs. Carroll's death and that the rupture could have occurred at any point during any kind of normal, reasonable everyday activity....
>
> .   .   .   .   .
>
> The Court finds that these facts do not constitute an accident under the definition in *Bobier* because the rupture of the aneurysm and resulting death do not "flow" from a commonplace cause. The rupture of the aneurysm is a totally separate intervening cause which could have occurred at any time. It does not flow in any sense of the imagination from the commonplace cause of intercourse.

Although the trial court based its analysis on the definition of accident in *Bobier,* the main focus of its findings is that there was little causal relationship between Mrs. Carroll's sexual activities and her death. The trial court states that "the aneurysm did not 'flow' from a commonplace cause" and that the rupture "could have occurred at any time." The main cause of Mrs. Carroll's death was her preexisting aneurysm and hypertension. Sexual intercourse was merely coincident with the rupture and not the predominant cause.

We therefore conclude that although the trial court and the court of appeals misinterpreted the law, the findings of the trial court demonstrate that it reached the correct result in entering a judgment for CUNA. The evidence even when considered in the light most favorable to Mr. Carroll supports the trial court's findings, which in turn establish that the predominant cause of Mrs. Carroll's death was her preexisting aneurysm and hypertension. Mr. Carroll has not sustained his burden of proving by a preponderance of the evidence that Mrs. Carroll's death was caused "directly and independently of all oth-

er causes." We therefore affirm the judgment of the Colorado Court of Appeals but do so based on reasoning different from that of the court of appeals.